UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>MIGUEL QUINONES,<br><br>Defendant. | 18 Cr. 472-1 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant Miguel Quinones, who is currently housed at the Federal Correctional Institution Schuylkill in Minersville, Pennsylvania ("FCI Schuylkill"), has applied for compassionate release, in the form of release to serve the remainder of his term of imprisonment in home detention, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In support, Mr. Quinones cites changed family circumstances, personal medical issues, and his demonstrated rehabilitation. The Government opposes this motion. As set forth in the remainder of this Order, the Court denies Mr. Quinones's motion.

## BACKGROUND[1]

### A.    The Offense Conduct

From 2016 through July 2018, law enforcement officers investigated a drug ring selling heroin and fentanyl in the vicinity of Marion Avenue and

---

[1]    In this Order, the Court refers to Mr. Quinones's Revised Presentence Investigation Report as "PSR" (Dkt. #112); to his counseled motion for compassionate release as "Def. Br." (Dkt. #134); to the exhibits to that submission as "Def. Ex." (Dkt. #134-1 to 134-4); to the Government's opposition submission as "Gov't Opp." (Dkt. #136); to Mr. Quinones's reply submission as "Def. Reply" (Dkt. #137); and to the exhibit to that submission as "Def. Reply Ex." (Dkt. #137-1). Given the sensitivity of the information disclosed to it, the Court will cite wherever possible to the redacted versions of Mr. Quinones's submissions.

188th Street in the Bronx, New York. (PSR ¶ 12). Mr. Quinones was a manager in the organization during this period, overseeing the day-to-day operations of eight to ten street-level dealers, including his co-defendants Michael West and Michael Villanueva. (*Id.* ¶ 13). Mr. Quinones used a residential building in the Bronx as a hub for his operations, supplying drugs and receiving money from that location. (*Id.* ¶ 14). When members of the organization, including Mr. Quinones, learned that a customer had overdosed from narcotics bearing the same stamp the organization used, they changed the stamp to elude law enforcement detection. (*Id.* ¶ 17). For his part, Mr. Quinones often carried a gun with him; he threatened members of the organization with violence and physically beat at least one other co-conspirator. (*Id.* ¶ 18). Law enforcement officers seized a loaded 9mm pistol and a .45-caliber magazine from Mr. Quinones's residence at the time of his arrest. (*Id.* ¶ 19).

Mr. Quinones was found to be responsible for distributing between 10 and 30 kilograms of heroin. (PSR ¶ 19). From Mr. Quinones's involvement in the organization, he made at least $232,500, which he used, among other things, to purchase property in Puerto Rico and build a house on that property. (*Id.* ¶ 16). In his plea agreement with the Government (the "Plea Agreement"), Mr. Quinones agreed to forfeit the house and the land; however, shortly after his guilty plea, Mr. Quinones arranged for the sale of the property and the distribution of the proceeds to others, thereby preventing its forfeiture. (*See id.* ¶¶ 36-38).

### B. The Indictments and the Guilty Plea

A sealed indictment was returned against Messrs. Quinones, West, and Villanueva on July 6, 2018. (Dkt. #3). Mr. Quinones was arrested on July 11, 2018, presented before Judge Sarah Netburn later that day, and arraigned by this Court on July 16, 2018. (Dkt. #9, 14 (transcript)). A superseding indictment, S1 18 Cr. 472, was returned on August 2, 2018, charging all three Defendants with participating in a conspiracy to distribute and possess with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. § 846, and charging Mr. Quinones alone with possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). (Dkt. #13). Several months later, a fourth superseding indictment, S4 18 Cr 472 (the "Indictment"), was filed against Mr. Quinones alone, adding a third count for using and carrying a firearm in connection with a drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Dkt. #24).

After a failed attempt on July 3, 2019, Mr. Quinones entered a plea of guilty to Count One of the Indictment on July 11, 2019. (Dkt. #49, 52 (plea transcript ("Plea Tr.")))). The plea was entered pursuant to a written Plea Agreement with the Government, in which, among other things, the parties stipulated that the applicable sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 210 to 262 months' imprisonment, with a mandatory minimum term of 10 years' imprisonment. (PSR ¶ 7). In the Plea Agreement, Mr. Quinones agreed not to appeal or to bring a collateral challenge to any sentence of imprisonment within or below

3

that range. During the plea proceeding, the Court confirmed Mr. Quinones's understandings of his rights and of the provisions of the Plea Agreement. (Plea Tr. 11-36). When asked what he did that made him guilty of the Count One narcotics conspiracy, Mr. Quinones explained that he agreed to sell, and sold, at least one kilogram of heroin and an indeterminate quantity of fentanyl to people in the Bronx between 2016 and 2018. (*Id.* at 36-38). At the end of the proceeding, the Court accepted Mr. Quinones's guilty plea. (*Id.* at 40).

**C.    The Sentencing and the Appeal**

In anticipation of Mr. Quinones's sentencing, the Probation Office prepared a Presentence Investigation Report (or "PSR"). The Probation Office calculated the Guidelines as the parties had, arriving at a Guidelines range of 210 to 262 months. (PSR ¶ 116). It recommended a sentence of 240 months' imprisonment. (*Id.*, Sentencing Recommendation). Mr. Quinones requested the mandatory minimum term of 120 months' imprisonment, citing his challenging upbringing, the conditions of confinement at the Metropolitan Detention Center (the "MDC") in Brooklyn, and his efforts at rehabilitation. (Dkt. #107). The Government sought a sentence within the applicable Guidelines range. (Dkt. #110).

Sentencing for Mr. Quinones was adjourned for several months, first to address certain forfeiture issues and then because of the COVID-19 pandemic. Ultimately, the sentencing took place on December 16, 2021. (*See* Dkt. #121 (sentencing transcript ("Sent. Tr.")); Dkt. #113 (judgment)). After answering clarifying questions posed by the Court, counsel for each side was given an

opportunity to make an oral sentencing presentation, and Mr. Quinones also spoke to the Court. (Sent. Tr. 4-40). After taking a recess to consider the parties' arguments, the Court then imposed sentence:

> I think in just about all of my sentencings, I am asked to balance very sad and tragic factors on both sides. I'm balancing unfortunate upbringings or drug dependence or mental health or physical issues, and I'm balancing those with what is very serious criminal conduct. This case is different in some respects. Most of the people I sentence in this context are on the lower rungs of the conspiracy. They are close to Mr. Villanueva, who was himself an addict, and closer to Mr. West than to someone at Mr. Quinones's level. Mr. Quinones was middle management, for lack of a better term, of the charged conspiracy, supervised eight to ten others, supplied drugs, supplied phones, was involved in distributing between 10 and 30 kilograms of heroin, and that to me is more significant than many of the drug conspiracies that I've seen.
>
> It is noteworthy to me that Mr. Quinones was not dissuaded by the possibility of harm, and by that I mean, whether or not he himself was responsible for changing the stamp, he certainly could have stopped participating in the organization after the overdose, and decided not to, decided to continue.
>
> He was not dissuaded by prior convictions, including a prior federal conviction, including a federal conviction that had a sentence of 84 months. And so there are really serious concerns about deterrence.
>
> There is also the looming threat of violence in this particular organization. The parties agree that Mr. Quinones possessed a gun. I believe that he threatened violence. And then there is the treatment of Mr. West. I understand that that is a subject of much dispute. And yet I will say that I thought Mr. West in his sentencing — and even if I don't credit the specific events, and I'm being asked not to think about the specific events that he told me — I will say that he is in part deeply psychologically harmed as a result of the experience, and I will also state that he referred to his

> relationship with Mr. Quinones as that of master and slave, and so at the very least, there was a threat of violence that Mr. Quinones employed. Whether he actually beat someone, I'm not sure, but the presence of the gun was there for something.
>
> And then there is the issue of forfeiture. And it disturbs me that Mr. Quinones had his attorney, in the waning months of his life, fight the government's motion for a cautionary notice while working at the same time to circumvent it. I'm not thinking that this is obstruction of justice conduct — no one is suggesting that it is — but it really does detract from the acceptance of responsibility that he otherwise showed by speaking with the government and by pleading guilty.
>
> I've also had to balance on the other side what is a truly tragic upbringing and childhood and the losses, many losses that Mr. Quinones has suffered. More than that, however, I focused on the conditions of your confinement, sir, over the past few years, because I too have seen what you have experienced living at MDC over that period of time. In all of the sentencings — well, I should say in most if not all of the sentencings that I have done in the pandemic of detained defendants, I have varied downwardly to account for the conditions of confinement, and I will do that here. But I nonetheless believe that a lengthy sentence is needed for just punishment, for respect for the law, and for deterrence.
>
> And so I'm varying downward to a term of 190 months' imprisonment, and I am ordering that that term be followed by a term of supervised release of five years, with the mandatory, standard, and special conditions that are outlined in the presentence investigation report.

(*Id.* 42-45).

In contravention of his plea agreement, Mr. Quinones appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit. (Dkt. #114, 115 (notices of appeal)). By order dated June 16, 2023, the Second Circuit dismissed one portion of his appeal, and otherwise

6

summarily affirmed Mr. Quinones's conviction and sentence. (Dkt. #123 (mandate)).

Mr. Quinones has been detained since his arrest in July 2018. According to the Bureau of Prisons (the "BOP"), his current projected release date is January 14, 2031.

**D.     The Instant Motion**

Mr. Quinones filed a *pro se* motion for compassionate release that was received by the Court on April 8, 2024. (Dkt. #124). Recognizing that Mr. Quinones would benefit from the appointment of counsel, the Court appointed David J. Cohen to represent him pursuant to the Criminal Justice Act, and directed that Mr. Cohen file a supplemental submission. (Dkt. #125).[2] Mr. Cohen filed a supplemental submission with exhibits on December 2, 2024. (Dkt. #134). The Government filed its opposition submission on January 2, 2025. (Dkt. #136). Mr. Cohen filed a counseled reply submission on behalf of Mr. Quinones on January 16, 2025. (Dkt. #137).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a

---

[2]     The Court thanks Mr. Cohen for his diligent and helpful work in this matter.

7

failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under Section 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order). The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see* [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir.

>   2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). The district court's discretion includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

The United States Sentencing Commission amended the policy statement contained at U.S.S.G. § 1B1.13, effective as of November 1, 2023, in order to provide guidance as to what constitutes extraordinary and compelling circumstances in defendant-initiated (as distinguish from BOP-initiated) compassionate release requests. This amendment "as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release motion, however initiated." *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE), 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024).

9

As relevant here, courts may consider the medical circumstances of a defendant, including whether the defendant is (i) "suffering from a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or (ii) "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death. U.S.S.G. § 1B1.13(b)(1)(B)-(C). The amended policy statement also recognizes that family circumstances may constitute extraordinary and compelling reasons, as, for example, where the defendant is the "only available caregiver" for "an individual whose relationship with the defendant is similar in kind to that of an immediate family member." *See id.* § 1B1.13(b)(3)(D).

In addition to the listed factual circumstances, the amended U.S.S.G. § 1B1.13 contains a catch-all provision that allows consideration of "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Finally, while the amended policy statement confirms that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," it notes that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in

determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

As suggested by *Keitt*, the "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant." *United States* v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). Even if a court finds that a defendant has established an extraordinary and compelling reason for a reduction in sentence, it still must then consider the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

## DISCUSSION

The Government does not dispute, for purposes of this motion, that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied. (*See* Gov't Opp. 4). The Court thus proceeds to consider whether Mr. Quinones has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has not.

Mr. Quinones's principal argument is one of changed family circumstances, namely, a series of medical issues that renders his close friend and *de facto* brother, Jerome Chestnut, in need in constant home health care. (Def. Br. 8-12; Def. Reply 2-5). The Court has reviewed statements from Mr. Chestnut and his half-brother, Marcus Dreher, and was moved by their contents. (Def. Ex. A, C; Def. Reply Ex. A). It has also reviewed with care Mr.

11

Chestnut's medical records (Def. Ex. B); the Court does not doubt the severity of the conditions described in those records, which it need not list here, or their toll on Mr. Chestnut. The fact remains, however, that Mr. Quinones is the preferred, but not the only, caregiver available for Mr. Chestnut.

"The animating principle of [U.S.S.G. § 1B1.13(b)(3)] is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver." *United States* v. *Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020). And while courts have granted compassionate release motions predicated on family circumstances, the evidence of the defendant's criticality to the preservation of the family unit in those cases is far more substantial than that presented here. *See, e.g.*, *United States* v. *Messina*, No. 11 Cr. 31 (KAM), 2024 WL 2853119, at *6 (E.D.N.Y. June 4, 2024) (collecting and distinguishing cases in which motions were granted because of family circumstances). Although the Court is sympathetic to Mr. Chestnut's situation, his half-brother Mr. Dreher is available to care for him. Moreover, Mr. Chestnut acknowledges that he is eligible to reside in a long-term care facility or to receive assistance from a full-time home health care aide. (*See* Def. Br. 10; Def. Reply 4-5). The Court respects Mr. Chestnut's decision to refuse both modes of care; however, on the facts of this case, it will not find these choices to amount to extraordinary and compelling circumstances warranting Mr. Quinones's release from prison.

Mr. Quinones argues that other circumstances exist that, in combination with Mr. Chestnut's medical issues, amount to a basis for compassionate release. For instance, Mr. Quinones notes his own medical issues (*see* Def. Ex. D), and explains that he is "very worried about his own health as he stands on the precipice of 50 years of age later this month, with this constellation of health problems, and understands the diet options and lifestyle in prison will not be conducive to gaining a healthier constitution." (Def. Br. 13). However, the Court has reviewed Mr. Quinones's own medical records provided by the BOP, which indicate that he is receiving appropriate care for his conditions, and his "diet" and "lifestyle" concerns about prison are not themselves extraordinary and compelling circumstances. In addition, Mr. Quinones seeks additional consideration from the Court because of the conditions of his confinement at the MDC and, later, during "his journey through the BOP system" (*id.* at 14); the Court rejects this invitation, having adequately considered those conditions at the time of the original sentencing.

Mr. Quinones also suggests that his rehabilitative efforts in prison warrant compassionate release. (Def. Br. 13-14). These include his designation to a prison camp; his responsibilities at that camp; and his efforts to better himself through educational programs. (*Id.* at 2, 13-14). These efforts are commendable, and the Court is pleased to see the productive manner in which Mr. Quinones has spent his time in prison. As noted, however, rehabilitation is not, by itself, sufficient to constitute an extraordinary and compelling circumstance, though "rehabilitation of the defendant while serving

13

the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d); *see also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Here, the Court finds that Mr. Quinones's proffered bases for relief, individually or in combination, do not amount to extraordinary and compelling reasons for his release, and it will not grant his motion based on his rehabilitation alone. *Cf. United States* v. *Muyet*, No. 95 Cr. 941 (LAP), 2024 WL 2830825, at *5 (S.D.N.Y. June 3, 2024) ("Simply put, the evidence of rehabilitation offered by Defendant does not, alone or in combination with all other relevant considerations, establish extraordinary and compelling reasons for a reduction in his sentence."); *United States* v. *Raposo*, No. 98 Cr. 185 (JPC), 2024 WL 165195, at *9 (S.D.N.Y. Jan. 16, 2024) ("And given the Court's findings that [the defendant's] other arguments do not constitute extraordinary and compelling reasons, even evidence of complete rehabilitation cannot suffice.").

      Finally, even were the Court to have found that Mr. Quinones's family circumstances and other conditions amounted to "extraordinary and compelling," it would still deny his motion after considering the factors set forth in 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to

criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C).  For a period of years, Mr. Quinones played a critical role in a wide-ranging heroin and fentanyl conspiracy that poisoned a Bronx neighborhood, going so far as to commandeer a residential building from which to run his operations.  Mr. Quinones managed a team of street-level dealers using violence and threats of violence; as the Court noted at sentencing, Mr. Quinones's actions caused lasting psychological harm to at least one of his co-defendants.  Mr. Quinones continued to traffic in narcotics despite multiple prior convictions, including a prior federal narcotics felony for which he was sentenced to an 84-month prison term.  And Mr. Quinones was not dissuaded by the overdose of one of the organization's customers; he and his confederates simply changed stamps and kept doing business.  Even then, the Court imposed a below-Guidelines sentence that reflected Mr. Quinones's challenging upbringing and the conditions of his confinement.  A further reduction in sentence would only contravene the Section 3553(a) factors that this Court strove so carefully to balance at the original sentencing.

## CONCLUSION

For the foregoing reasons, Defendant Miguel Quinones's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  The Clerk of Court is directed to terminate the motions at docket entries 86, 124, and 134, which were resolved by this or earlier orders of the Court.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:  February 18, 2025
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge